FILED
 2014 Sep-10 PM 03:00
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SHIRLEY E. EDGE,            )
                            )
        Plaintiff,           )
                            )
    vs.                     )        5:13-cv-01476-LSC
                            )
CAROLYN W. COLVIN,           )
Commissioner of Social Security, )
                            )
Defendant.                   )

MEMORANDUM OF OPINION

I.  Introduction

Plaintiff Shirley E. Edge ("Edge" or "Plaintiff") appeals from the decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI") benefits.  Edge timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Edge was forty-two years old at the time of the ALJ's decision, and she has a tenth grade education. (Tr. at 57, 159.) Her past work experiences include employment as a cashier. (*Id.* at 169.) Edge claims that she became disabled on July 14, 2010, due to degenerative disc disease, herniation, bulging disc with lumbar and cervical radiculopathy, major depressive disorder, and anxiety with migraine

headaches. (*Id.* at 154.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the Court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ determined that Edge had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.* at 25.) According to the ALJ, Plaintiff's lumbar and cervical degenerative disc disease, left elbow lateral epicondylitis, pain disorder, major depressive disorder, post-traumatic stress disorder, and migraines are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26.) The ALJ determined that Plaintiff has the following RFC: sedentary exertional work with a sit-stand option at will as long as she is not more than 10% off task; she can occasionally reach overhead and occasionally push and pull; she should avoid concentrated exposure to bright lights and pulmonary irritants such as flumes, odors, dusts, and gases; she is limited to simple, routine, and repetitive tasks in a low stress job defined as few if any changes in work environment and few if any work-related decisions; she is restricted to no interaction with the public and only brief and superficial interaction with co-workers. (*Id.* at 28.)

According to the ALJ, Edge has no past relevant work experience, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (*Id.* at 37.) The ALJ determined that "transferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) The ALJ, utilizing a vocational expert ("VE") and employing Medical-Vocational Rule 201.25 as a guideline, found that there are a significant number of jobs in the national and regional economy that she is capable of performing, such as inspector, sorter, and packager. (*Id.* at 38.) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 14, 2010, the

date the application was filed." (*Id.*)

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by

substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however. "Despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Edge alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ erred in giving little weight to the opinion of Dr. John Haney, a psychologist, who was a one-time consultative examiner in this case. (Doc. 10 at 5.) Second, Plaintiff contends that the ALJ's physical RFC findings are not based on substantial evidence. (*Id.* at 7.)

A. Consultative Examiner's Diagnoses

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. § 404.1527(c). *See Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011) (stating that

the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole"). Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary

conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).

Dr. Haney performed a consultative psychological evaluation on Plaintiff on August 30, 2010, at the request of the Social Security Administration. (Tr. at 254-55.) On examination, Dr. Haney determined that Plaintiff was oriented to time, place, person, and situation. (*Id.* at 254.) He determined that she had poor memory, she was afraid of new people because of her past assaults and rapes, and she claimed that she had previously been diagnosed by a psychiatrist as a "bipolar schizophrenic." (*Id.* at 255.) He estimated Plaintiff's intelligence in the "low range or lower." (Tr. at 254-55.) Dr. Haney found no psychotic symptoms, but stated that her mood was "sad." (*Id.* at 254.) Dr. Haney diagnosed Plaintiff with moderate Major Depressive Disorder with suicidal ideation, Pain Disorder, and Post-traumatic Stress Disorder. (*Id.*) He

also diagnosed Plaintiff with Learning Disorder (unspecified) and "Consider Borderline Personality Disorder." (*Id.*) He concluded that "[Edge's] ability to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations." (*Id.* at 255.) He recommended a referral to a local mental health center. (*Id.*)

  The ALJ articulated several reasons for giving Dr. Haney's opinion little weight. She noted that his examination report was vague and conclusory and that the psychologist was reaching outside his area of expertise with the statement about physical limitations. (Tr. at 54.) She also noted that Dr. Haney only examined Plaintiff once and never treated her. She noted that Plaintiff was not taking any medications at the time of the exam and was not seeking mental health treatment. Significantly, the ALJ concluded that Haney's opinion was not supported by the record, which reveals little to no mental health treatment. (*Id.*) Indeed, there is no evidence of mental health treatment from July 14, 2010, Plaintiff's SSI application date, through February 22, 2012, the date of the ALJ's decision. Plaintiff never saw a mental health specialist, was never hospitalized for psychiatric episodes, and she never sought counseling or therapy or even complained of depression or anxiety to her primary care doctors. She briefly took Citalopram in early 2010 but has not filled her

prescription since June 2010. She was not prescribed any other medication designed to treat psychiatric or mental symptoms. She never attempted to find treatment from a free or subsidized mental health clinic. Plaintiff did not follow up on Dr. Haney's referral to a local mental health center.

The ALJ's decision to give little weight to Dr. Haney's opinion is supported by substantial evidence. Apart from the above brief descriptions of Plaintiff's symptoms, Dr. Haney's report lacked any explanation of how or why he reached these conclusions. 20 C.F.R. § 416.027(d)(3) (stating that more weight should be given to opinions supported by explanations). As a result, it is impossible to determine whether Dr. Haney used objective tests to reach his conclusions, or whether he relied on the plaintiff's own reports of her symptoms, which appears more likely. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 - 60 (11th Cir. 2004) (one factor that an ALJ may consider in determining that good cause exists not to give a physician's opinion substantial weight is if the physician's opinion was based primarily on the plaintiff's subjective complaints). Furthermore, the ALJ was correct in determining that Dr. Haney was acting outside of his area of expertise as a psychologist when discussing the Plaintiff's physical limitations. *See Chaney-Everett v. Astrue*, 839 F.Supp.2d 1291, 1302 (S.D. Fla. 2012) (quoting 20 C.F.R. §§

404.1527(d)(5), 416.927(d)(5) (allowing the ALJ to consider the medical source's specialization when weighing medical opinions)).

Additionally, the very few mental health records that are in the record support the ALJ's decision to give Dr. Haney's opinion little weight. The ALJ gave great weight to the opinion of a state agency reviewing physician, Dr. Samuel Williams, who completed a Psychiatric Review Technique and a Mental RFC Assessment of Plaintiff on September 23, 2010. Dr. Williams found that Plaintiff had Post-Traumatic Stress Disorder and Major Depressive Disorder. (Tr. at 259, 261.) He indicated that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.*) He noted that Plaintiff had never had mental health treatment or been on mental health medication. (*Id.*) He found that Plaintiff could understand and remember simple instructions and work procedures but might have difficulty with detailed instructions. (*Id.*) She could carry out simple tasks but might have difficulty carrying out complex ones. (*Id.*) She might need a work environment with a few familiar coworkers to minimize anxiety. (*Id.*) Her interaction with the public should be casual and non-intensive. (*Id.*) The ALJ's RFC assessment takes Dr. Williams' opinions into account by limiting Plaintiff to

simple, routine, and repetitive tasks in a low stress job with only brief and superficial interaction with co-workers and no interaction with the public. Dr. Williams's opinion is more consistent with the record as a whole than Dr. Haney's is, because it takes into account the fact that, while Plaintiff complained of emotional issues relating to past trauma, her mental incapacities do not rise to the level of being totally disabling.

The ALJ also relied on a function report completed by the plaintiff in July 2010 as well as the Plaintiff's testimony, in assessing Plaintiff's mental incapacities. Although Plaintiff's reports described daily activities that were fairly limited—Plaintiff reported not trusting anyone because of her past rapes and having no friends—the ALJ noted that several factors weighed against considering Plaintiff's allegations to be strong evidence in favor of finding her disabled. The ALJ first noted that it is difficult to attribute a high degree of limitation to Plaintiff's mental condition, as opposed to other reasons, in view of the relatively weak medical evidence in the record. (Tr. at 36.) The ALJ also noted that Plaintiff has a poor earnings history, her last income being in 2000. She never worked at the level of substantial gainful activity for a full year. (Tr. at 36.) She stopped working in 2000 when she was laid off rather than because of her allegedly disabling impairments. (*Id.*) The ALJ determined that

these inconsistencies in the information provided by the plaintiff weighed against finding her disabled based on mental problems, and the plaintiff has not challenged the ALJ's credibility finding. The ALJ's credibility determination also supports his decision to give little weight to the opinion of Dr. Haney, which indicated in a conclusory fashion that Plaintiff's mental incapacities were disabling. In any event, although the ALJ gave Dr. Haney's opinion little weight, she still found that Plaintiff suffered from severe mental impairments requiring a low stress job, repetitive tasks, and only brief and superficial interaction with coworkers and no interaction with the public. (*Id.*)

Edge also suggests that the ALJ should have recontacted Dr. Haney if she thought that his opinion was vague and conclusory. The regulations allow the Commissioner to recontact a consultative examiner if his report is inadequate or incomplete. *See* 20 C.F.R. § 404.1519p(b) (2011) (stating that "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report"). An ALJ's duty to recontact a treating physician stems from his "'basic obligation to develop a full and fair record.'" *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir.

2008). However, an ALJ is not required to "order more evidence where the record is sufficient to establish whether the claimant is disabled." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). The ALJ's duty to recontact was not triggered in this case. The ALJ also had a thorough report from Dr. Williams as well as Plaintiff's function report and her testimony at the hearing as evidence of Plaintiff's mental limitations. This evidence, combined with the lack of treatment for mental problems during the relevant period, was sufficient to present the ALJ with a complete picture of Plaintiff's mental functioning.

B.   Sufficiency of the ALJ's Physical RFC Findings

Plaintiff asserts that the ALJ lacked sufficient evidence to support her physical RFC assessment for three sub-reasons. First, she argues that the ALJ had not sufficiently developed the record by not obtaining a medical source opinion. Second, she takes issue with the ALJ's decision to employ a non-M.D. disability specialist to aid in determining the plaintiff's physical RFC. Finally, she asserts that the ALJ's statement that a sit/stand option "at will as long as she is not more than 10% off task" is not sufficiently clear or complete to allow an adjudicator to make an informed judgment, as required by SSR 96-9p. (Doc. 10 at 7.)

The plaintiff carries the general burden of proving her disability. 20 C.F.R. §

404.1512(a). The determination of an RFC is an administrative assessment, rather than a medical determination. SSR 96-5p, 61 Fed. Reg. 34,471, 34,472 (July 2, 1996). The Commissioner's regulations make it clear that the responsibility for determining the RFC is the ALJ's, and it is based on all the evidence in the record rather than solely on medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). The lack of a medical source statement ("MSS") about what the claimant can do despite her impairments will not make the record incomplete. 20 C.F.R. § 404.1519n(c)(6). An MSS from a physician is not required when there is sufficient other evidence in the record to support the ALJ's determination. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (ALJ properly determined claimant's ability to do light work based on claimant's testimony, medical history, and activities, without an MSS). Nor is the ALJ's RFC determination flawed because the record does not contain an assessment of Plaintiff's physical limitations by a physician. *See Green v. Commissioner of Soc. Sec.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (holding that other evidence from the plaintiff's physicians, which did not contain an RFC assessment, sufficiently supported the ALJ's finding that the plaintiff could perform light work)).

In this case, the record was sufficient for the ALJ to determine Plaintiff's physical RFC without the need for an MSS. As noted by the ALJ, the Plaintiff's

treatment by Dr. Gregory Bostick, Dr. Steven Fuller, Dr. Richard Bucco, and Quality of Life Health Services, Inc. was conservative in nature, consisting largely of prescriptions for pain medication. (Tr. at 33.) *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ properly noted claimant's conservative treatment as evidence discrediting claimant's allegations). On February 4th, 2009, Plaintiff visited Dr. Bostick for a routine checkup. (Tr. at 212-223.) On September 3rd, 2009, Plaintiff visited Dr. Bostick again for laryngitis. (*Id.*) Neither visit suggested that the plaintiff was impaired or restricted due to pain or an inability to move. An MRI on April 16th, 2009 showed that there was a "minimal" posterior protrusion at C6-7 and a "tiny" central disc herniation at C7-T1, with no other significant findings. (Tr. at 287.) In September 2009, Plaintiff was treated by Dr. Fuller for complaints of bilateral hand pain and left elbow pain. (Tr. at 225.) Dr. Fuller noted that Plaintiff had been prescribed an elbow brace, noted some tenderness of the cervical spine, and some limited range of motion of both arms. (Tr. at 225-26.) He diagnosed cervical radicular pain radiating into the arms. (Tr. at 227.) On September 30, 2009, nerve conduction and EMG studies were negative for C5-T1 radiculopathy, ulnar neuropathy, peripheral polyneuropathy, and/or carpal tunnel syndrome. (Tr. at 236-37.) On May 11, 2010, Dr. Richard Bucco treated Plaintiff for complaints of low back pain. (Tr. at

247-49.) He prescribed Lortab. (Tr. at 249.) On June 8, 2010, Dr. Bucco diagnosed cervical degenerative disc disease, migraines, lumbago, thoracic pain, and muscle spasms. (Tr. at 245-46.) On June 14, 2010, an MRI of the lumbar spine revealed degenerative disc disease. (Tr. at 339.) On December 1, 2011, Dr. Manfred Ramos treated Plaintiff for intermittent pain in the cervical and lumbar spine. (Tr. at 293-97.) Plaintiff confirmed smoking cigarettes daily. (Tr. at 293.) Dr. Ramos diagnosed degenerative disc disease of the lumbar spine and cervicalgia, and prescribed Lodine, Medrol, and Robaxin. (Tr. at 296-97.) He advised neck and back exercises and "activity as tolerated." (Tr. at 297.) An examination at Quality of Life Health Services, Inc. on December 16th, 2011 showed that the plaintiff self-diagnosed her back pain as a severity level of 6, rather than above 10, as stated during the hearing. (Tr. at 77, 294). Additionally, the examination showed that pain in her cervical and lumbar spine was only "mild." (Tr. at 294.) Finally, though the ALJ doubted the severity of Plaintiff's impairments, she nevertheless restricted her RFC assessment and VE hypothetical based on Plaintiff's complaints at the hearing, such as Plaintiff's claim that she could sit for thirty to forty-five minutes before stretching. (Tr. at 29.)

Thus, despite the fact that there was no MSS in support of the ALJ's physical RFC finding, there is substantial evidence to support the ALJ's conclusion. While the

plaintiff has some physical impairments, they do not prevent her from working such that she is entitled to Social Security disability benefits. Significantly, none of the treating or examining physicians noted physical limitations that would prevent the performance of sedentary work. As noted, the medical evidence demonstrates limited and conservative treatment by Dr. Bucco in 2010, and only one examination by Dr. Ramos in 2011. There was no treatment from August 2010 until December 2011.

Plaintiff also takes issue with the fact that the only RFC assessment was established by a non-M.D. specialist whose opinion is afforded no weight. (Doc. 10 at 7.) However, in Alabama, a Single-Decisionmaker ("SDM") is allowed to fill out an RFC assessment without the need for a physician. *See* Modifications to the Disability Determination Procedures; Extension of Testing of Some Disability Redesign Features, 71 Fed. Reg. 45890, 2006 WL 2283653 (Aug. 10, 2006); 20 C.F.R. § 404.906. Plaintiff is correct in asserting that, after initial denial, a SDM's opinion is afforded no weight. *See* Program Operations Manual System (POMS) DI 24510.05, 2001 WL 1933365. However, the ALJ did not refer to the SDM's assessment at all, and instead relied on the objective medical evidence from Plaintiff's past treatment notes and examinations to determine Plaintiff's physical RFC for sedentary work with additional limitations. As shown above, there was substantial evidence to enable the

ALJ to determine physical RFC without relying on the SDM.

Finally, Plaintiff asserts that the ALJ's statement that a sit/stand option "at will as long as she is not more than 10% off task" is not sufficiently clear or complete to allow an adjudicator to make an informed judgment, as required by SSR 96-9p. (Doc. 10 at 7.) Social Security Ruling 96-9p requires that the RFC assessment be specific as to the frequency of the individual's need to alternate between the required sitting of sedentary work by standing. Presumably Plaintiff finds it unclear what "10% off task" refers to. However, an examination of the hearing transcript, particularly the colloquy between the ALJ and the VE, reveals that the ALJ meant a sit/stand option that would take Plaintiff away from her work duties for no more than 10% of the workday. (Tr. at 84.) The VE testified that there are still sedentary level jobs that an individual would be able to perform with a sit/stand option as long as she were no more than 10% off task. (*Id.*) The VE further testified that because the Department of Labor defines working on a constant basis as working at least 85% of the workday, a limitation that would take an individual away from her duties for 15% of the workday would be the most that would be tolerated such that the individual could still work. (*Id.*) The ALJ satisfied SSR 96-9p by denoting specifically how long the plaintiff could stand as opposed to sit at a sedentary job.

IV.   Conclusion

Upon review of the administrative record, and considering all of Edge's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 10th day of September 2014.

                                         _____
                                         L. Scott Coogler
                                         United States District Judge
                                                                    [160704]